**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| Bryce Zucker, on behalf of himself and all others similarly situated | Case No. |
| Plaintiff, | CLASS ACTION |
| v. | |
| Volkswagen Group of America, Inc., A New Jersey Corporation, | JURY TRIAL DEMANDED |
| Defendant. | |

## CLASS ACTION COMPLAINT

# I.     INTRODUCTION

Plaintiff ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), alleges the following:

1.     The United States Government, through the Environmental Protection Agency, has passed and enforced laws designed to protect United States citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans. Automobile manufacturers must abide by these US laws and must adhere to EPA rules and regulations. This case arises because Bryce Zucker ("Plaintiff") claims that Defendant Volkswagen Group of America ("Volkswagen") purposefully and intentionally breached the laws of the United States and the rules and regulations of the EPA by selling in the United States vehicles manufactured by its affiliates Volkswagen AG and Audi AG that purposefully evaded federal and state laws. As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health." Yet that is exactly what Volkswagen did in its 2009-2015 Volkswagen Audie diesel vehicles.[1]

2.     As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant Volkswagen in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test.  But otherwise, that is at all other times that the vehicle is running, the emissions controls are suppressed. This results in

---

[1] *See* Sept. 18, 2015 EPA News Release.

cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations. The software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

3.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.

4.     The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of the emissions control system during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

5.      According to the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Affected Vehicles"): MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3. Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

6.      Volkswagen expressly marketed and advertised its CleanDiesel models as extraordinarily clean, EPA certified in all 50 states, and powerful. For example, the following promotional material was used in 2010, and similar materials have been used across the spectrum of models using the CleanDiesel engine system:



7.      Volkswagen has charged a substantial premium for the Affected Vehicles, ironically marketed by Volkswagen as "CleanDiesel."  For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780.  The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860.  The CleanDiesel premium for the highest trim Jetta model is substantially higher.  The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

8.      These premiums occur across all of the vehicles in which Volkswagen installed its "defeat device" for emissions testing.  The table below sets forth the price premium of each base, mid-level and top-line trim for each affected model:

### Clean Diesel Price Premiums

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

9.      Volkswagen has been ordered by the EPA to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation.  However, Volkswagen will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their

5

performance characteristics, including their horsepower and their efficiency.  As a result, even if Volkswagen is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners of Affected Vehicles to pay more for fuel while using their affected vehicles.

10.     On September 20, 2015, Volkswagen admitted that the EPA allegations were true.  It admitted using a "defeat device in the Affected Vehicles.  Its now-former-CEO Martin Winterkorn stated:  "I personally am deeply sorry that we have broken the trust of our customers and the public."

11.     As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit 40 times the allowed levels, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property.  Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.  Moreover, when and if Volkswagen recalls the Affected Vehicles and degrades the CleanDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased.  Moreover,

affected vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency.

12.     Plaintiff brings this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles.  Plaintiff seeks damages, injunctive relief, and equitable relief for the conduct of Volkswagen related to the "defeat device," as alleged in this Complaint.

## II.     JURISDICTION

13.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.     VENUE

14.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff claims occurred in this District.  Plaintiff Bryce Zucker resides in this District and purchased his Affected Vehicle in this District.  Moreover, Volkswagen has marketed, advertised, sold, and leased the Affected Vehicles within this District.

## IV.     PARTIES

### A. Plaintiff

15.     Plaintiff Bryce Zucker is an individual residing in Brentwood, Missouri. In 2015, Plaintiff purchased a new 2014 Jetta TDI from Suntrup Volkswagen, an

authorized Volkswagen dealer in Saint Louis County, Missouri.  Plaintiff purchased,

and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was

purchased, it was equipped with an emissions control "defeat device" which caused the

vehicle to get and undue EPA certification and pass emissions test, but at all other times

emit 40 times the allowed level of pollutants, including NOx.  The use of the "defeat

device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted

repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully

used the "defeat device," but did not disclose the "defeat device" and its effects to

Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that

his vehicle complied with United States emissions standards, was properly EPA

certified, and would retain all of its operating characteristics throughout its useful life.

     16.    Plaintiff selected and ultimately purchased his vehicle, in part, because of

the "CleanDiesel" system, as represented through advertisements and representations

made by Volkswagen.  Plaintiff recalls that the advertisements and representations

touted the cleanliness of the engine system for the environment and the efficiency and

power/performance of the engine system.  None of the advertisements reviewed or

representations received by Plaintiff contained any disclosure relating to the "defeat

device" or that Volkswagen has purposefully falsified its certification of EPA

compliance.  Had Volkswagen disclosed that the CleanDiesel actually emitted 40 times

the permitted levels of pollutants, including NOx, Plaintiff would not have purchased

the vehicle with the CleanDiesel engine, or would have paid less for the vehicle.

     17.    Plaintiff and each Class member has suffered an ascertainable loss as a

result of Volkswagen's omissions and/or misrepresentations associated with the CleanDiesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

18.     Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the "defeat device" and/or defective design of the CleanDiesel engine prior to purchase.

## B. Defendant

19.     Volkswagen Group of America, Inc., is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.  At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Volkswagen and Audi brand names throughout the United States.  Volkswagen and/or its agents designed, manufactured, and installed the CleanDiesel engine systems in the Affected Vehicles, which included the "defeat device."  Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

## V.     TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule Tolling

20.     Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and "defeat device."  It took federal EPA

and California Air Resources Board investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part. As reported by the Los Angeles Times on September 18, 2015, it took California Air Resources Board testing on a special dynamometer in a laboratory, open road testing using portable equipment, and the use of special testing devised by the Board to uncover Volkswagen's scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests. Plainly, Volkswagen was intent on expressly hiding its behavior from regulators and consumers. This is the quintessential case for tolling.

21.    Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emission qualities of its vehicles.

22.    Plaintiff and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Volkswagen had information in its possession about the existence of its sophisticated emissions scheme and that it opted to conceal that information, which was discovered by Plaintiff only shortly before this action was filed.  Nor in any event would such an investigation on the part of Plaintiff and other Class members have

10

disclosed that Volkswagen valued profits over compliance with federal and state law, or the trust that Plaintiff and other Class members had placed in its representations, or that, necessarily, Volkswagen actively discouraged its personnel from raising or disclosing issues with regard to the true quality and quantity of the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

23.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

**B. Fraudulent Concealment Tolling**

24.    All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

25.    Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

**C. Estoppel**

26.    Volkswagen was under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

27.    Volkswagen knowingly, affirmatively, and actively concealed the true

nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

28.     Volkswagen was also under a continuous duty to disclose to Plaintiff and Class members that it had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that it systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

29.     Based on the foregoing, Volkswagen is estopped from relying on any statues of limitations in defense of this action.

## VI.     CLASS ALLEGATIONS

30.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23 (a), (b) (2), and (b) (3) of the Federal Rules of Civil Procedure on behalf of the following class (collectively, the "Class"):

> All persons or entities in the state of Missouri who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

31.     Excluded from the Class are individuals who have personal injury claims resulting from the "defeat device' in the CleanDiesel system. Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

32.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

33.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

34.     <u>Numerosity</u>.  Federal Rule of Civil Procedure 23(a) (1):  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believes that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Volkswagen's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

35.     <u>Commonality and Predominance</u>:  Federal Rule of Civil Procedure 23(a) (2) and 23(b) (3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including , without limitation:

    a.  Whether Volkswagen engaged in the conduct alleged herein:

    b.  Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States:

c.  Whether the CleanDiesel engine system in the Affected Vehicles contains a defect in that it does not comply with U.S. EPA requirements;

d.  Whether the CleanDiesel engine systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

e.  Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

f.  Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a "defeat device";

g.  Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h.  Whether Plainitiff and the other Class members overpaid for their Affected Vehicles;

i.  Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j.  Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

36.    <u>Typicality</u>:   Federal Rules of Civil Procedure 23(a) (3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

37.    <u>Adequacy</u>:  Federal Rule of Civil Procedure 23 (a) (4): Plaintiff is an

14

adequate Class representative because his interests do not conflict with the interests of the other members of the Classes he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

38.     Declaratory and Injunctive Relief:  Federal Rule of Civil Procedure 23 (b) (2): Volkswagen has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

39.     Superiority:  Federal Rule of Civil Procedure 23 (b) (3):  A Class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for the members of the Classes to individually seek redress for Volkswagen's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
### (Mo. Rev. Stat. § 407.020, *et seq.*)

40.     Plaintiff Bryce Zucker incorporates by reference all preceding allegations as if fully set forth herein.

41.     Plaintiff brings this claim individually and on behalf of the Class under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020, which reads as follows:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce …in or from the state of Missouri, is declared to be an unlawful practice…. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

42.     Volkswagen participated in deceptive, fraudulent and unfair acts that violated the MMPA.  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the MMPA.

43.     In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment,

16

suppression or omission, in connection with the sale of Affected Vehicles.

44.     Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

45.     Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

46.     By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the MMPA.

47.     In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

17

48.     Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

49.     Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Class.

50.     Volkswagen knew or should have known that its conduct violated the MMPA.

51.     As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

52.     Volkswagen owed Plaintiff a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

a.  Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

b.  Intentionally concealed the foregoing from Plaintiff; and/or

c.  Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat

device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiff that contradicted these representation.

53.     Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

54.     Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Class.   A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

55.     Plaintiff and the Class suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

56.     Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the MMPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the

course of Volkswagen's business.

57.     Volkswagen's violations present a continuing risk to Plaintiff as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

58.     As a direct and proximate result of Volkswagen's violations of the MMPA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

59.     Pursuant to Mo. Rev. Stat. §§ 407.025 and 407.025.1, Plaintiff and the Class seek monetary relief against Volkswagen in the amount of actual damages, as well as punitive damages because Volkswagen acted wantonly, willfully, outrageously, and with reckless disregard for the consequences of its acts.

60.     Plaintiff also seeks an order for punitive damages, attorneys' fees, and any other just and proper relief available under Mo. Rev. Stat. § 407.025.1.

## COUNT II
## FRAUD BY CONCEALMENT

61.     Plaintiff Bryce Zucker incorporates by reference all preceding allegations as if fully set forth herein.

62.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to its engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which

contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

63.     Plaintiff and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and Class members did not, and could not, unravel Volkswagen's deception on their own.

64.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales about the trust that Plaintiff and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the Los Angeles Times in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah,

which no doubt reflect the sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases into the environment."

65.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including its compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

66.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Class members. Volkswagen also had a duty to disclose because it made general

22

affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing its vehicles must pass. Volkswagen represented to Plaintiff and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

67.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Class members.

68.     On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

69.     Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive its heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff and Class Members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Class members.

70.     Because of the concealment and/or suppression of the facts, Plaintiff and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiff and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would

have paid less for their vehicles or would not have purchased or leased them at all.

71.    The value of Plaintiff' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

72.    Accordingly, Volkswagen is liable to Plaintiff and Class members for damages in an amount to be proven at trial.

73.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(Based on Missouri Law)**

74.    Plaintiff Bryce Zucker incorporates by reference all preceding allegations as thou fully set forth herein.

75.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Missouri Class

25

members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Missouri Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system Accordingly, Plaintiff and the other Missouri Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

76.     Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Missouri Class members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

77.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Missouri Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully requests that the Court enter judgment in his favor and against Volkswagen, as follows:

A.      Certification of the proposed Missouri Class, including appointment of Plaintiff's counsel as Class Counsel;

B.      An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief in the form of a recall or free replacement program;

D.      Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

E.      An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

F.      An award of costs and attorneys' fees; and

G.      Such other or further relief as may be appropriate.

## IX.     DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable


DATED: September 24, 2015                SIMMONS HANLY CONROY LLC

By:  _s/ Sarah S. Burns_____
Sarah S. Burns 56554
One Court Street
Alton, Illinois 62002
sburns@simmonsfirm.com
             -and-
Paul J. Hanly, Jr. (PH 5486)
             (*pro hac vice forthcoming*)
112 Madison Avenue, 7th Floor
New York, New York 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
phanly@simmonsfirm.com